UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PREFERRED REHABILITATION, INC.,
SPINE, SPORTS AND OCCUPATIONAL
MEDICINE, P.C.,

           Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,

           Defendant.
_____/

Civil Action No.
09-CV-11409

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO ENFORCE THE ONE YEAR BACK RULE and (2) GRANTING DEFENDANT'S MOTION TO STRIKE ORDER ENTERED BY WAYNE COUNTY CIRCUIT COURT ON APRIL 2, 2010**

## I. INTRODUCTION

This contested insurance case involves personal injury protection (PIP) benefits. Plaintiffs, Preferred Rehabilitation, Inc. ("PRI") f/k/a Preferred Medicine, Inc. ("PMI") and Spine, Sports & Occupational Medicine, P.C. ("SSOM"), provided physical therapy and rehabilitation services to insureds of Defendant Allstate Insurance Company ("Allstate"). However, Allstate allegedly stopped paying invoices submitted by Plaintiffs beginning in April 2003, and has refused to pay such invoices ever since. Plaintiffs are suing for the unpaid balances of these invoices along with attorney's fees and interest to which Plaintiffs claim they are statutorily entitled. Plaintiffs also seek damages for tortious interference with a business relationship and defamation.

Now before the Court is Allstate's Motion for Partial Summary Judgment. Allstate asks the Court to dismiss all claims incurred by (1) PRI prior to March 27, 2008, and (2) SSOM prior to June

1

1, 2005. Both requests are based on what is known as the "one-year-back rule," codified at Mich. Comp. Laws § 500.3145(1). The rule prohibits a claimant from recovering "[personal injury] benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced."

In addition, Allstate has filed a separate motion asking the Court to strike a written order issued almost a year after this matter was removed to this Court by Wayne County Circuit Judge John A. Murphy, who presided over this case prior to removal.

Both motions are fully briefed and the Court heard oral argument on August 18, 2010. For the reasons that follow, Allstate's motions will be granted.

## II. PROCEDURAL BACKGROUND

This is the third lawsuit involving similar parties and claims. Wayne County Circuit Judge John A. Murphy presided over the first two cases, and then over the present case until its removal to this Court on April 15, 2009.

### A. The First Action (1998)

The first case, filed in 1998, ended in a consent judgment, the terms of which are not important for the present purposes. The first lawsuit did not conclusively resolve the entire dispute, necessitating a second lawsuit.

### B. The Second Action (2003)

In the second lawsuit, filed in November 2003 (hereinafter "the 2003 case"), PMI brought suit against Allstate asserting the same general claim being asserted in the present lawsuit – that Allstate improperly refused to reimburse it for treatment rendered to Allstate insureds under Michigan's no-fault act. Allstate asserted a counterclaim, arguing that it had a right to deny

reimbursement on the ground that PMI rendered the treatment illegally because PMI was not properly incorporated, and had committed numerous violations of the state health code, including having non-licensed staff members render treatment. *PRI was neither an original party nor a third party in the 2003 case*.

On December 2, 2004, Judge Murphy rejected Allstate's arguments and granted summary disposition in favor of PMI and SSOM (and the other third party defendants, listed in footnote one). *See* Pls.' Ex. A. On January 4, 2005, Judge Murphy issued another opinion, this time granting summary disposition in favor of PMI on the original complaint. *See* Pls.' Ex. B. Both decisions were affirmed by the Michigan Court of Appeals, *see* Pls.' Ex. J (opinion of the Michigan Court of Appeals), and the Michigan Supreme Court denied leave to appeal on October 27, 2008, thereby ending the litigation in the 2003 case. *See* Pls.' Ex. D (order of the Michigan Supreme Court).

Soon after Judge Murphy issued his two decisions granting summary disposition against Allstate and in favor of PMI, SSOM, and the other third party defendants, the parties agreed to a stipulated judgment titled "Judgment & Order Staying Proceedings Pending Appeal," which was entered by Judge Murphy on June 1, 2005. *See* Pls.' Ex. C. As the title suggests, the order addresses, among other things, the parties' rights pending appeal. In pertinent part, the order states:

> IT IS FURTHER ORDERED that as to future claims submitted by PREFERRED MEDICINE, INC., and/or SPINE, SPORTS & OCCUPATIONAL MEDICINE, P.C., [Allstate] retain[s] the right to assert any and all defenses to payment, including the "illegality defenses" at issue in this litigation. Those future claims will not be subject to the limitation period in MCL 500.4145(1) [the "one-year-back" rule] during the pendency of [Allstate's] appeals, and [PMI and SSOM] need not file suit to recover no-fault benefits for such future claims during the pendency of [Allstate's] appeals.

*Id*. at 2-3. The second sentence of this decree reflects the parties' clear intent to freeze time for

3

purposes of the one-year-back rule during the pendency of Allstate's appeal. The Court hereinafter refers to the second sentence of this decree as "the tolling provision" of the June 1, 2005, decree.

The ultimate question to be determined by this Court in adjudicating Allstate's present Motion for Partial Summary Judgment is whether the tolling provision applies to the present claims brought by PRI, an entity not expressly mentioned in the June 1, 2005, decree (the decree mentions PMI and SSOM only).

### C. The Present Action (2008)

The present action was filed in Wayne County Circuit Court on April 21, 2008. The Original Complaint is captioned as follows: *Preferred Rehabilitation, Inc. f/k/a Preferred Medicine, Inc. a Michigan Corporation v. Allstate Insurance Company*.

In the opening paragraph of the Original Complaint, Plaintiff is defined as "Preferred Medicine, Inc. ('PMI')." Throughout the remainder of the Original Complaint, Plaintiff is referred to as "PMI." At no point in the Original Complaint does PRI seek any relief. The only party asserting any claim for relief in the Original Complaint is PMI. Accordingly, in this Court's Opinion and Order of December 29, 2009, denying Plaintiffs' motion to remand in this matter, the Court concluded that the only party plaintiff seeking relief with regard to the Original Complaint was PMI.

Allstate filed an answer to the Original Complaint in state court, listing the one-year-back rule as an affirmative defense.

Thereafter, Plaintiffs filed an Amended Complaint on March 27, 2009, in state court. The Amended Complaint is captioned as follows: Preferred Rehabilitation, Inc. f/k/a Preferred Medicine,

4

Inc. and Spine, Sports & Occupational Medicine, P.C. v. Allstate Insurance Company. The Amended Complaint refers to the plaintiffs consistently as PRI and SSOM. SSOM was not a party with regard to the Original Complaint.

This case was removed to federal court on April 15, 2009.

Thereafter, in this Court's Opinion and Order of December 29, 2009, denying Plaintiffs' motion to remand, the Court ruled that it "must consider [PMI and PRI] separate." Docket entry 35, pp. 2-3 n.2.

After the filing of the Amended Complaint, but before Allstate had filed an answer, Plaintiffs (PRI and SSOM) filed a motion in state court before Judge Murphy to strike the one-year-back rule as an affirmative defense to the Amended Complaint. Since Allstate had not yet filed an answer to the Amended Complaint, the one-year-back rule potential defense had not yet been asserted as a defense to the Amended Complaint; that issue was not ripe for resolution by Judge Murphy. Thus, although that defense had been asserted against the Original Complaint, that complaint had been superseded by the Amended Complaint. The bottom line is that on April 10, 2009, Judge Murphy held a hearing on the motion relating to a matter not then before the court.

The issue before Judge Murphy was whether the one-year-back limitation period was frozen, pending Allstate's appeal of the 2003 case, as to the claims brought in this action by PRI, pursuant to the tolling provision of the June 1, 2005, decree, despite the fact that only PMI and SSOM—and not PRI—were expressly mentioned in the tolling provision. Judge Murphy ruled from the bench, granting Plaintiffs' motion.

Subsequent to the removal on April 15, 2009, Allstate filed an answer to the Amended Complaint listing that affirmative defense. Thus, that issue had only been raised after the removal

to this Court on April 15, 2009. The issue of whether PRI and PMI were the same entities was litigated in this Court in 2009. This Court ruled that they were separate entities.

Further completing the state court litigation scenario, after the April 10, 2009, state court hearing and ruling from the bench, Plaintiffs submitted a proposed order for Judge Murphy's consideration. State court rulings are controlled by the judge's written orders. Via motion dated April 22, 2009, Allstate objected to Plaintiffs' proposed order, arguing that it did not accurately reflect Judge Murphy's ruling from the bench. Allstate states, uncontested, that Judge Murphy refused to hold a hearing on its objection; his reason – because the case had been removed, the state court had been divested of jurisdiction.

Further, the proposed order submitted by Plaintiffs to Judge Murphy did not reflect his ruling. Plaintiffs' proposed order stated that "Plaintiff's Motion to Strike Affirmative Defenses is granted," when in fact, Judge Murphy had struck only one of Allstate's affirmative defenses -- the one-year-back rule. Allstate, seeking to correct Plaintiffs' proposed order in state court, submitted a different proposed order, which read, in pertinent part:

> IT IS HEREBY ORDERED that [Allstate] is precluded from raising as an affirmative defense the statutory "One Year Back Rule", referenced in MCL 500.3145(1), under the Michigan No Fault Act as to [PRI].

Pls.' Ex. N, p. 5. In its April 22, 2009, motion in state court, Allstate wrote that its proposed order, reproduced above, "clearly and accurately reflect[s] . . . the true nature of [Judge Murphy's] Ruling." *Id*. at p. 2. Thus, as of removal on April 15, 2009, that objection filed by Allstate—a substantive issue, the scope of Judge Murphy's bench ruling—was in play in state court; no decision has been rendered by Judge Murphy as to the two conflicting versions of his ruling.

Judge Murphy, having refused to schedule a hearing on Allstate's objections to that bench

6

ruling because he no longer had jurisdiction after removal, did not enter a written order in April 2009, or indeed, at any time in 2009. As the Court previously noted, state court rulings are set forth in their written orders.

On the other hand, the case at hand, which had been removed to this Court on April 15, 2009, progressed in federal court. Significantly, on December 29, 2009, this Court denied Plaintiffs' motion to remand, and also ruled that PRI and PMI were separate entities. Application of the latter ruling would mean that the one-year-back rule would apply to claims brought by PRI.

This caused Plaintiffs' counsel to return to Judge Murphy's state courtroom in April 2010, with an emergency motion requesting that he enter a written order based on his April 2009 bench ruling striking the one-year-back affirmative defense as to PRI – a defense that had been only asserted by Defendant Allstate in federal court, when it filed its answer to the Amended Complaint.

In response, Judge Murphy rediscovered/resurrected jurisdiction and granted Plaintiffs' request, thereby making a substantive ruling on a contested issue regarding two different versions of a proposed written order, one year after the case had been removed to federal court.

### III. ANALYSIS

As noted above, there are currently two motions before the Court: Allstate's "Motion for Partial Summary Judgment to Enforce the One Year Back Rule" and its "Motion to Strike Order Entered in Wayne County Circuit Court Friday April 2, 2010." The Court addresses the two motions in reverse order.

#### A. Allstate's Motion to Strike Judge Murphy's April 2, 2010, Order

After a copy of a notice of removal is filed with a state court, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). As stated in Moore's

7

Federal Practice:

> Once a copy of the notice of removal is filed with the clerk of the state court in which the action is pending, the state court is divested of jurisdiction. The state court must stop all proceedings unless and until the case is remanded. Any state court action after the filing of the removal notice is void ab initio . . .
>
> * * * *
>
> Despite this prohibition, courts have held that the "proceed no further" language [of 28 U.S.C. § 1446(d)] does not bar state courts from performing ministerial acts that do not affect the merits of the dispute between the parties. If the contrary were true, state courts would be forever prohibited from taking any act regarding a removed case (assuming no remand). This bar would include actions such as the routine destruction of old files, allowing parties to remove documents for proper legal purposes, or any similar action that requires a court order.

16 Moore's Fed. Practice ¶ 107.31[2] (3d ed. 2010) (citation and footnotes omitted).

Plaintiffs argue that the entry of Judge Murphy's order on April 2, 2010, constituted a "ministerial act" in light of the fact that Judge Murphy had already issued his ruling from the bench, although the order signed one year later differed from the order he issued in April 2009. In support of their argument, Plaintiffs rely upon two cases, *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687 (6th Cir. 1999), and *Pebble Creek Homes, LLC v. Upstream Images, LLC*, 547 F. Supp.2d 1214 (D. Utah 2007), both discussed below.

In response, Allstate argues that Judge Murphy's entry of the April 2, 2010, order was not a mere "ministerial act" because "the merits of barring the one-year back defense in this case were never argued nor presented to the state court." But even apart from this claim, there is a compelling, second reason that his April 2010 order was not a mere ministerial act. Judge Murphy's April 2, 2010, order was not merely a written embodiment of the April 2009 bench order. Finally, a third response by Allstate is that, because it had not yet filed an answer to the Amended Complaint in

8

state court, Judge Murphy's ruling from the bench in April 2009 was a nullity, because it struck a defense that was not at issue before the court.

In *Lawrence*, the Sixth Circuit held that the "proceed no further" clause of § 1446(d) did not prevent the state court from billing plaintiffs, post-removal, accrued court costs pursuant to cost bonds signed by plaintiffs before removal, while the action was still pending in state court:

> we see no reason to believe that Congress intended for the state courts in removed cases to be forever paralyzed from taking ministerial steps that do not affect the adjudication of the parties' dispute. Because the collection of accrued court costs from a state-court plaintiff who has signed a cost bond is not inconsistent with § 1446(d)'s purpose and appears to be the only way that a state can recoup the costs incurred by such a plaintiff whose case is removed, there is a valid basis for the state's practice.

*Id*. at 692-693. Here, the issue is clearly about substance, not costs.

Similarly not on point, is a Utah federal district court decision holding that the post-removal entry of an unopposed order by the state court judge was "ministerial" and did not violate the "proceed no further" clause. *See Pebble Creek Homes*, 547 F. Supp.2d at 1218. Significantly, there were no outstanding objections, disputes, or issues between the parties at the time the state court judge entered the post-removal order memorializing his pre-removal, in-court ruling. Thus, "the merits of the already-adjudicated issue" were "in no way affected" by the post-removal entry of the order:

> The only act that [the state court judge] took subsequent to the removal was on July 25, 2007, when he performed the ministerial function of signing and entering the order reflecting his earlier, in-court ruling on July 10, 2007. Because this final, essentially clerical task in no way affected the merits of the already-adjudicated issue disputed by the parties, the court finds that the state court order does not violate § 1446(d). To hold otherwise would enable defendants to effectively nullify dispositive rulings made at state court hearings by rushing to remove the case before the administrative entrance of the written version of the decision.

9

*Id*. at 1218-1219.

*Pebble Creek Homes* and the present case are distinguishable because, in *Pebble Creek Homes*, "the merits of the already-adjudicated issue" were "in no way affected" by the post-removal entry of the order, thereby rendering entry of the order purely ministerial. As noted by the court, "no . . . objections [to the state judge's in-court ruling] were filed." *Id*. at 1218. The same is not true in the present case. Here, objections to Judge Murphy's in-court ruling were pending. Judge Murphy refused to hold a hearing on the issue in 2009 because the action had been removed, divesting him of jurisdiction. Yet, a year later, he entered Allstate's version of the proposed order at Plaintiffs' urging. But, that order was not merely ministerial because the substantive rights of the parties were affected. *See* 16 Moore's Fed. Practice ¶ 107.31[2] ("ministerial acts . . . do not affect the merits of the dispute between the parties"). This brings the present case outside the ambit of *Pebble Creek Homes*, a case in which, unlike the present case, "the merits of the already-adjudicated issue" between the parties were unaffected by the post-removal entry of an order by the state judge. Thus, the post-removal order entered by Judge Murphy on April 2, 2010, relating to a substantive issue, was void ab initio and is stricken from the record.

### B. Allstate's Motion for Partial Summary Judgment

#### 1. Law

"After the removal of an action from state court, the federal district court acquires full and exclusive subject-matter jurisdiction over the litigation. The case will proceed as if it originally had been brought in the federal court." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3738, pp. 692-694 (4th ed. 2009) (footnote omitted). With regard to the post-removal effect of pre-removal orders and rulings issued by the state court, Wright

and Miller state:

> Orders or rulings issued by the state court prior to removal are not conclusive in the federal action after removal; however, it is well-settled that state court rulings do remain binding on the parties unless and until formally set aside by the federal district court. Indeed, the third paragraph of 28 U.S.C.A. Section 1450 provides that "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."
>
> * * * *
>
> A federal court has particularly good reason to reconsider a state court determination where federal standards differ from state law standards on an issue. Thus, in *Fairbank v. Johnson*, [212 F.3d 528 (9th Cir. 2000)], the Ninth Circuit held that a district court did not abuse its discretion in reaching the merits of defendant's motion for summary judgment on an employee's retaliation claim after the state court, before removal, had denied summary judgment on that claim; the differences between the federal and the state standards for granting summary judgment provided a cogent reason to reconsider the state court ruling.

*Id*. at pp. 723-730 (footnotes omitted). In other words,

> the federal court takes the case on removal exactly as the case stood in state court. Accordingly, the state court pleadings, any discovery had, orders entered, or proceedings will be presumed valid by the district court. . . . Moreover, state court rulings (including discovery orders and all other orders up to and including judgment) remain in effect until modified or supplanted by the federal court.

16 Moore's Fed. Practice ¶ 107.31[3] (footnotes omitted). Summarizing,

> [i]n the context of removal, once the case is in federal court, the state court orders issued prior to removal are not conclusive but remain binding until they are set aside. *See* 28 U.S.C. § 1450 (providing that all "orders and other proceedings had in such [state court] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court"); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 436, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ("The 'full force and effect' provided state court orders after removal of the case to federal court was not intended to be more than the force and effect the orders would have had in state court."). As the Supreme Court explained in *Granny Goose Foods*, by providing that the state court

> proceedings are effective in federal court, judicial economy is promoted, and the parties' rights are protected. *See* 415 U.S. at 435-36, 94 S.Ct. 1113. The district court therefore should not have relied on the doctrine of res judicata in deciding the case. Instead, it should have evaluated the state court proceedings under the law of the case doctrine and, under the principles of that doctrine, declined to revisit any matters that presented no reason for revisitation.

*Payne for Hicks v. Churchich*, 161 F.3d 1030, 1037-1038 (7th Cir. 1998) (footnote omitted).

## 2. Discussion

Before this case was removed, Judge Murphy ruled from the bench on the issue currently before the Court – whether the present claims brought by PRI were covered by the tolling provision of the June 1, 2005, decree notwithstanding the fact that only PMI and SSOM, and not PRI, were expressly mentioned in the decree.

To the extent that Judge Murphy's in-court ruling constitutes an "order," as that word is used in 28 U.S.C. § 1450, the Court now dissolves and modifies it pursuant to § 1450 because it is erroneous as a matter of law in light of the fact that (1) PMI and PRI are separate entities and (2) Judge Murphy, in April 2009, lacked legal authority to strike a defense which, at the time, had not even been asserted by Allstate, and in April 2010 lacked jurisdiction over this case.

As discussed, Judge Murphy ruled from the bench on April 10, 2009, that the tolling provision of the June 1, 2005, order—which, by its terms, applies only to claims brought by PMI and SSOM—applies to claims brought by PRI, as well. This Court found in its December 29, 2009, Opinion and Order denying Plaintiffs' motion to remand, that PMI and PRI are separate legal entities. The corporate documents of PRI and PMI, which are attached as Exhibits H and G to Allstate response to Plaintiffs' motion to remand, reflect that the two entities, *inter alia*, have different corporate identification numbers. The tolling provision of the June 1, 2005, decree, by its

express terms, applies only to claims brought by PMI and SSOM. It does not apply to claims brought by PRI. Had the parties wanted it to apply to claims brought by PRI, they could have included PRI in the terms of the decree. They did not. The analysis begins and ends here. There is no question but that this Court's ruling on the specific PRI/PMI issue in the order denying Plaintiffs' motion to remand, sent Plaintiffs' lawyers back to the Wayne County Circuit Court in an attempt to re-write the law of the case in this Court.

Additionally, as of April 10, 2009, the date on which Judge Murphy ruled that the tolling provision of the June 1, 2005, decree applies to PRI, Allstate had not yet filed an answer to the recently-filed Amended Complaint. Allstate had asserted the one-year-back rule a defense to the Original Complaint, which was no longer in play; it had been superseded at the time of Judge Murphy's in-court ruling. Thus, Judge Murphy struck a non-asserted, non-existent defense; his in-court bench ruling was a legal impossibility and therefore a nullity.

Plaintiffs argue that the Court should not disturb Judge Murphy's April 10, 2009, in-court ruling based on the Rooker-Feldman doctrine. This argument is meritless because the Rooker-Feldman doctrine may not be invoked to abrogate the power of a district court, under appropriate circumstances, to "dissolve[] or modif[y]" an order entered by a state court prior to removal. *See* 28 U.S.C. § 1450 ("[a]ll injunctions, orders, and other proceedings had in [state court] prior to . . . removal shall remain in full force and effect until dissolved or modified by the district court"). As one court has observed,

> the Rooker-Feldman doctrine does not apply to any review that is authorized by Congress. As 28 U.S.C. § 1450 authorizes the district court review of state court orders entered prior to removal, there exists an independent statutory basis permitting reconsideration of the state court determination.

*Holmes v. AC & S, Inc.*, 388 F. Supp.2d 663, 674 (E.D. Va. 2004) (citation omitted). The rationale

for this rule has been explained by a district court in New York:

> Upon removal, the orders entered by the state court are treated as though they had been entered by the federal court. *See, e.g., In re Diet Drugs*, 282 F.3d 220, 231-32 (3d Cir. 2002) ("After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed."); *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1316 (5th Cir. 1992) ("A prior state court order in essence is federalized when the action is removed to federal court."); *Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74, 79 (9th Cir. 1979) ("[T]he federal court . . . treats everything that occurred in the state court as if it had taken place in federal court.") (internal quotation marks omitted); *Tehan v. Disability Mgmt. Servs.*, 111 F. Supp.2d 542, 547 (D.N.J.2000) ("[T]he orders or judgments entered by the state court prior to removal should be treated as orders or judgments entered by the district court."). Because the "Rooker-Feldman doctrine does not work to defeat a district court's authority over the management of its own case," even where the exercise of such management "has the secondary effect of voiding a state court determination," the doctrine does not preclude this Court from reviewing orders that were entered prior to removal. *In re Diet Drugs*, 282 F.3d at 241-42. In any event, the doctrine does not apply to any review that is authorized by Congress. *See Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir.2002). Because Section 1450 authorizes this Court to reconsider the September Order, the Rooker-Feldman doctrine does not preclude such reconsideration.

*Nasso v. Seagal*, 263 F. Supp.2d 596, 608 (E.D.N.Y. 2003). *See also Doe v. Mann*, 415 F.3d 1038, 1044 (9th Cir. 2005) ("Congress may by statute grant federal courts authority to review certain state court judgments").

Plaintiffs further argue that Allstate is essentially estopped from arguing that PRI and PMI are separate entities based on a stray remark made by Allstate's counsel at the April 10, 2009, hearing before Judge Murphy. There, after Judge Murphy ruled against Allstate, counsel for Allstate stated:

> I would like a copy of any and all tax returns from 2003 to the present because Preferred Rehabilitation is currently the same thing as Preferred Medicine.

Pls.' Ex. K, p. 27. Plaintiffs argue that this is an "evidentiary admission" and a "clear and unequivocal statement [that] constitutes a judicial admission under Michigan law which dispenses with the need for any further proof of such fact." The Court rejects this argument; PMI and PRI are not the same just because Allstate's counsel, after the state court ruled that they were the same, wanted to seek further discovery as to whether tax returns would support or defeat Plaintiffs' claims.

For all these reasons, the tolling provision of the June 1, 2005, decree—which, by its express terms, applies only to claims brought by PMI and SSOM—does not apply to claims brought by PRI.

The question now is what this means. That is – given the Court's decision to dissolve Judge Murphy's June 10, 2009, in-court ruling, what is the date before which claims incurred by PRI are barred pursuant to the one-year-back rule?

PRI filed the present action on March 27, 2009, the date on which the Amended Complaint was filed.[1] The one-year-back rule prohibits a claimant from recovering "[personal injury] benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." Mich. Comp. Laws § 500.3145(1). Thus, PRI may not recover any PIP benefits for any portion of its loss incurred prior to March 27, 2008, which is one-year-back from the date on which PRI commenced this action.

Allstate also argues that SSOM is not entitled to recover any claims that it incurred prior to June 1, 2005. Everyone agrees that claims brought by SSOM are subject to the tolling provision contained in the June 1, 2005, decree. Again, the decree states that "future claims will not be subject

---

[1] As the Court previously held in its Opinion and Order denying the motion to remand, "[t]he only party asserting any claim of relief in the Original Complaint is PMI." Docket entry 35, p. 3. PRI first became a party plaintiff when the Amended Complaint was filed on March 27, 2009.

15

to the [one-year-back rule] during the pendency of [Allstate's] appeals." Pursuant to that decree, time was frozen for purposes of the one-year-back rule from June 20, 2005 (the date on which Allstate filed its claim of appeal), until October 27, 2008 (the date on which the Michigan Supreme Court denied leave to appeal the opinion of the Michigan Court of Appeals affirming Judge Murphy's grants of summary disposition against Allstate).

SSOM filed the present action on March 27, 2009, the date on which the Amended Complaint was filed.[2] The one-year-back rule bars recovery of any claims incurred by SSOM prior to one-year before this date, which is March 27, 2008, subject to the tolling provision contained in the June 1, 2005, decree. Time was frozen during the pendency of Allstate's appeal until October 27, 2008. By the Court's calculation, 151 days elapsed between October 27, 2008 (when time began to run, again) and March 27, 2009 (when SSOM filed this lawsuit). This left 214 days to run out the clock (365 minus 151). Thus, recovery of any claims incurred by SSOM prior to November 18, 2004, which deducts 214 days from June 20, 2005, is barred.

However, the tolling provision applies only to "future claims." The parties disagree as to the meaning of this term. Allstate argues that "future" means future – any claims not submitted as of June 1, 2005, the date of the order. Plaintiffs, on the other hand, assert that "future" has a special meaning:

> the parties' understanding as to "future claims" (terminology not defined in the June 1, 2005 stipulated order) meant *in context* all claims for treatment of Allstate no-fault insureds as to which suit had not previously been filed as to which judgment was not being entered on June 1, 2005.

---

[2] This is the date on which the Amended Complaint was filed. SSOM was not a party plaintiff with regard to the Original Complaint in this matter. It first became a party plaintiff when it filed the Amended Complaint on March 27, 2009.

Pls.' Resp. at 9 (emphasis in original).

The Court agrees with Allstate. Plaintiffs urge the Court to construe "future" to mean something different than its plain and ordinary meaning. Given that the term is undefined, assigning a unique meaning to the term would be improper. *See Cole v. Auto-Owners Ins. Co.*, 272 Mich. App. 50, 53 (2006) ("[u]nless otherwise defined, contractual language is given its plain and ordinary meaning"). Thus, the phrase "future claims submitted" means any claims not submitted as of June 1, 2005 or, phrased differently, claims that were submitted after June 1, 2005. SSOM may recover any claims that it incurred after November 18, 2004, provided that they are "future claims" – claims submitted after June 1, 2005.

## IV. CONCLUSION AND ORDER

For the reasons discussed above,

IT IS ORDERED that Allstate's Motion for Partial Summary Judgment is granted. PRI may not recover any PIP benefits for any portion of its loss incurred prior to March 27, 2008. SSOM may recover any claims that it incurred after November 18, 2004, provided that they are "future claims" – claims submitted after June 1, 2005.

IT IS FURTHER ORDERED that Allstate's Motion to Strike is granted. The order entered by Wayne County Circuit Judge John Murphy on April 2, 2010, is stricken from the record.

S/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: September 1, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 1, 2010.

                                          S/Denise Goodine
                                          Case Manager